# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00092-CV

**Rachel Rawlins, Appellant**

**v.**

**Daughters of Charity Health Services of Austin d/b/a Seton Medical Center, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 1 OF TRAVIS COUNTY,
### NO. C-1-CV-07-013049, HONORABLE ERIC SHEPPERD, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This is a malpractice case against a hospital. The trial court rendered a no-evidence summary judgment in favor of the Appellee hospital and against Appellant on her claim that her pathologist, an independent contractor, was the ostensible agent of the hospital. The only question presented is whether under these facts a pathology report issued on the hospital's pathology department letterhead is sufficient to raise a fact issue as to whether the hospital can be held vicariously liable, under the theory of ostensible agency, for the independent pathologist's alleged negligence. Agreeing with the trial court that it cannot, we will affirm the judgment.

## BACKGROUND

Appellant Rachel Rawlins ("Rawlins") filed a malpractice action against Richard Hammer, M.D. ("Hammer"), a pathologist; against Hammer's medical professional group, Clinical Pathology Associates; and against Seton Healthcare (formerly Daughters of Charity

Health Services of Austin d/b/a Seton Medical Center) ("Seton"). Rawlins alleged that Hammer misdiagnosed her breast cancer as micrometastatic disease, thereby resulting in her undergoing needless chemotherapy, an axillary node dissection, and other unnecessary treatment; she further alleged that she suffered related sequelae, including symptoms consistent with premature ovarian failure.

At the time of the alleged misdiagnosis, Hammer was employed by Clinical Pathology Associates. This independent entity contracted with Seton for its doctors to provide pathology services at the hospital. Rawlins underwent surgery at the hospital. Her biopsy tissue was taken to the hospital's pathology department for diagnosis, where Hammer reviewed the slides and reported his findings. Rawlins had never met Hammer and did not select him as her pathologist. Hammer issued and signed his reports, which Rawlins received after her surgery, on letterhead entitled "Seton Medical Center Department of Pathology." Each page contains the words "SMC Surgical Path Report" or "SMC pathology." The reports contain no reference to Clinical Pathology Associates, nor do the reports give any indication that Hammer is an independent contractor or that he is affiliated with any entity other than Seton.[1] Rawlins contends that, based upon these written reports, she reasonably believed that Hammer was a Seton employee, which influenced her decisions not to seek a second pathology opinion.[2]

---

[1] Seton points out that Rawlins signed admission papers informing her that the hospital's pathologists were independent contractors and not hospital employees. Rawlins objected that this evidence was attached to Seton's no-evidence motion and, therefore, should not be considered under Rule 166a(i). Without deciding the matter, we do not rely upon this evidence in making our decision.

[2] Rawlins's claims against Hammer and his medical group were settled.

Rawlins alleged that Dr. Hammer was the actual agent or employee of the hospital, and she further alleged in the alternative that Hammer was the ostensible agent of the hospital. Seton filed a traditional motion for summary judgment on Rawlins's allegation that Hammer was Seton's actual agent or employee; Rawlins did not oppose this motion, and the trial court granted it. Seton also filed a no-evidence motion for summary judgment, contending that Rawlins had produced no evidence that Hammer was Seton's ostensible agent. Rawlins filed a cross motion for partial summary judgment, asking the trial court to hold as a matter of law that Hammer was Seton's ostensible agent. The trial court granted Seton's motion and denied Rawlins's motion. Rawlins requests this Court to reverse the summary judgment, contending that the record contains more than a scintilla of evidence on every element necessary to prove that Hammer was Seton's ostensible agent.

## DISCUSSION

### Standard of Review

To prevail on a no-evidence summary judgment motion, the movant must show that "there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." Tex. R. Civ. P. 166a(i). A defendant's no-evidence summary judgment motion asserts that the plaintiff has produced no evidence of one or more essential elements of its claim. *Duvall v. Texas Dep't of Human Servs.*, 82 S.W.3d 474, 477 (Tex. App.—Austin 2002, no pet.). In response to a defendant's no-evidence motion, the plaintiff must produce summary judgment evidence raising a genuine issue of material fact on each challenged element in order to defeat the motion. If the plaintiff fails to produce more than a scintilla of

3

evidence of the challenged fact, the motion must be granted. Tex. R. Civ. P. 166a(i); *see Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 581-82 (Tex. 2006).

If more than a scintilla of evidence of the necessary element exists, it is legally sufficient to raise a fact issue. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). The nonmovant produces more than a scintilla of evidence on an element if the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Id.*; *Merrell Dow Pharm., Inc. v Havner*, 953 S.W.2d 706, 711 (Tex. 1997). A nonmovant produces less than a scintilla of evidence when the evidence is "so weak as to do no more than create a mere surmise or suspicion of fact." *See Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983).

When the trial court has granted a no-evidence motion for summary judgment, the appellate court should affirm the summary judgment if (1) there is no evidence to prove one or more necessary elements; (2) the evidence offered to prove the challenged element is no more than a scintilla; (3) the evidence establishes the opposite of the challenged element; or (4) the court is barred from considering the only evidence offered to prove the challenged element. *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). The appellate court should review the evidence in the light most favorable to the appellant, crediting evidence favorable to the appellant if reasonable jurors could and disregarding unfavorable evidence unless reasonable jurors could not. *Timpte Indus. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). Review of a no-evidence motion for summary judgment is restricted to the evidence contrary to the motion. *City of Keller*, 168 S.W.3d at 825.

### *Elements Necessary to Prove Ostensible Agency*

In general, doctors are considered independent contractors with respect to the hospitals where they practice and have staff privileges; therefore, a hospital ordinarily cannot be held liable for the negligent acts or omissions of independent physicians who practice in its facilities. *Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 948 (Tex. 1998). However, a hospital can be held vicariously liable in a medical malpractice context if a plaintiff can establish all the elements of ostensible agency. *Id.* In order for Seton to be held liable for Hammer's alleged negligence, Rawlins must prove Hammer was the ostensible agent of Seton. To prove ostensible agency, Rawlins has the burden to prove (1) that she held a reasonable belief that Hammer was the agent or employee of Seton; (2) that Rawlins's belief was generated by some affirmative conduct on the part of Seton holding Hammer out as its employee or agent or knowingly allowing Hammer to hold himself out as such; and (3) that Rawlins justifiably relied upon the appearance and representation of authority that Hammer was Seton's employee or agent. *Id.* at 949. By its ruling, the trial court held that Rawlins failed to produce more than a scintilla of evidence on one or more of these necessary elements. Rawlins contends that the record contains more than a scintilla of evidence supporting each element necessary to prove ostensible agency. Her position turns primarily upon the written reports Hammer signed.

Rawlins asserts that the record contains evidence showing that she held a reasonable belief that Hammer was Seton's employee or agent. She did not choose Hammer as her pathologist; in effect, the hospital chose him for her. Hammer's pathology reports purport to be issued by Seton's pathology department, with no indication that the reports were issued by Hammer on behalf of any

5

other entity not affiliated with Seton. Hammer signed the reports, with no indication that he signed on behalf of any entity other than Seton. Rawlins's belief that Hammer was Seton's employee or agent relies primarily upon the fact that Hammer issued and signed Rawlins's pathology reports on Seton letterhead and, therefore, on their face, the reports purport to be issued from Seton's pathology department by a Seton pathologist.[3]

Rawlins further asserts that the record contains evidence that her reasonable belief that Hammer was Seton's employee or agent was generated by Seton's actions or conduct. Hammer shares an office located at Seton. There, he does his work in the pathology department with laboratory personnel employed by Seton. He dictates his pathology reports and passes them to Seton transcriptionists, who type his reports into Seton's computers and issue the paper copies such as the ones Rawlins received.[4] Rawlins's biopsy specimens were delivered to Hammer for him to review, analyze, and issue reports on her medical condition. Seton employees typed Hammer's pathology reports concerning Rawlins on Seton letterhead, and he signed them. Rawlins contends that this process demonstrates that her reasonable belief was generated as a result of Seton's actions, because Seton affirmatively held Hammer out as its employee or agent, or knowingly allowed Hammer to

---

[3] Seton argues that there are legal reasons related to its accreditation and certification that require the reports to be issued in this manner. Rawlins disputes Seton's position, arguing that Seton elects whether to seek accreditation and, in any event, it could easily produce the reports in a form that would satisfy accreditation and still inform the patient. Regardless, the question is not why the reports are issued in this manner but whether the reports produce in the patient a reasonable belief that the reports are issued by a Seton pathology department agent or employee.

[4] We note that there is no evidence that Rawlins knew these facts at the time of the events in question or that these facts in any way influenced her belief that Hammer was Seton's employee or agent.

hold himself out as representing Seton, by preparing and issuing his reports on Seton pathology department letterhead, without limitation or qualification as to his position.

Finally, Rawlins argues that the record contains evidence that she justifiably relied upon her belief that Hammer was a Seton agent or employee and that this influenced her not to obtain a second pathology opinion. Rawlins's affidavit is the only evidence in the record on this third element of ostensible agency. Rawlins states in her affidavit:

> I called a friend's husband who is a doctor and asked him whether I should get a second opinion on the pathology. He asked me where I'd received my care and I told him it was at Seton; he responded that I probably didn't need to worry about it. I took that to mean that he trusted the quality of care being provided at Seton. My belief that this was a Seton pathologist played into my decision not to seek a second opinion.[5]

Rawlins's affidavit reflects that she sought a doctor friend's advice on whether to get a second pathology opinion. When she informed her friend that she received her care at Seton, the friend advised Rawlins that "[she] *probably* didn't need to worry about it," which Rawlins "took to mean" that [her doctor friend] "trusted the quality of care" Seton provides. Rawlins interpreted her friend's comment to mean that he held a positive opinion of the quality of care generally rendered at Seton, and thereafter Rawlins chose not to seek another opinion. Rawlins contends that her affidavit evidences the fact that she justifiably relied upon her belief that Hammer was Seton's employee in deciding not to obtain a second pathology opinion. Nothing about these facts, however, raises that

---

[5] Seton objected at trial to these statements as being hearsay and, therefore, inadmissible. The record contains no other evidence on the issue of justifiable reliance. For purposes of this opinion, we will assume, without deciding, that the statements in the affidavit are admissible.

issue. The evidence does not suggest that the quality of care rendered at Seton depended upon the services being provided by a hospital agent or employee, as opposed to another health care provider—such as an independent contractor—providing services at the hospital. Neither the friend's comments to her nor Rawlins's affidavit assertions bear on Hammer's employment relationship with Seton. Further, Rawlins's belief that Hammer was a Seton pathologist only "played into" her decision not to seek a second opinion and does not raise a genuine issue of a material fact. The record does not contain evidence that Rawlins justifiably relied on her belief that Hammer was Seton's agent or employee in deciding not to seek a second opinion.

Rawlins contends that the record contains evidence that she believed Hammer to be a Seton agent or employee, that Seton's conduct generated this belief, and that she justifiably relied upon that belief in making decisions about her medical care. We disagree. We agree with the trial court that the evidence constitutes at best only a scintilla of evidence, not more, as to the elements necessary to prove ostensible agency. Applying the correct standard of review, we overrule Rawlins's complaint on appeal.

**CONCLUSION**

Having overruled the issue on appeal, we affirm the trial court's judgment.

8

_____

Marilyn Aboussie, Justice

Before Chief Justice Jones, Justices Pemberton and Aboussie*

Affirmed

Filed:   August 26, 2011

* Before Marilyn Aboussie, Chief Justice (retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 2005).